# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| D.S.B. and D.A.B., by their next friend and parent, C.B., | : | CIVIL ACTION No._____ |
| Plaintiffs, | : | |
| v. | : | **ELECTRONICALLY FILED** |
| PITTSBURGH PUBLIC SCHOOLS, | : | |
| Defendant. | : | **COMPLAINT IN CIVIL ACTION** |

Filed on behalf of Plaintiffs:
D.S.B., D.A.B., and C.B.

Counsel of Record for this Party:

Charles E. Steele, Esquire
PA I.D. No. 36583
STEELE SCHNEIDER
Lawyers Building
428 Forbes Avenue, Suite 700
Pittsburgh, PA 15219
(412) 235-7682
(412) 235-7693/facsimile
charliesteele@steeleschneider.com

**JURY TRIAL DEMANDED**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| D.S.B. and D.A.B., by their next friend and parent, C.B., | CIVIL ACTION No._____ |
| Plaintiffs, | |
| v. | **ELECTRONICALLY FILED** |
| PITTSBURGH PUBLIC SCHOOLS, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT IN CIVIL ACTION

AND NOW, TO WIT, this 5th day of August, 2013, D.S.B. and D.A.B., and C.B., Plaintiffs, by and through their attorney, CHARLES E. STEELE, Esquire, file this Complaint in Civil Action against the PITTSBURGH PUBLIC SCHOOLS, Defendant, and in support thereof avers as follows:

### JURISDICTION AND VENUE

1. This action arises in part under Title IX of the Education Amendments Act of 1972 (20 U.S.C. § 1681 *et seq*.) and Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq*.).

2. Jurisdiction is conferred on the Court by 28 U.S.C. §1331.

3. Venue in this District is proper under 28 U.S. C. §1391(a).

### PARTIES

4. The Plaintiff D.S.B. and D.A.B. (hereinafter "Plaintiffs," "Plaintiff D.S.B.," or "Plaintiff D.A.B."), are sisters and Pittsburgh Public School students who reside in Pittsburgh, PA.

2

5. Plaintiff C.B. is Plaintiffs' D.S.B. and D.A.B.'s mother and reside with them in Pittsburgh, PA.

6. The Defendant herein is Pittsburgh Public Schools (hereinafter, "Defendant"), a public school district having an address at 341 S. Bellefield Ave. Pittsburgh, PA 15213.

## FACTUAL BACKGROUND

7. Plaintiffs are students at John Morrow Elementary School, an Elementary School in Defendant School District.

8. Plaintiff D.S.B. is an eleven-year-old female student who completed the fifth grade in June 2013.  Plaintiff D.A.B. is an eight-year-old female student who completed the second grade in June 2013.

9. Plaintiffs are African-American.  Plaintiff D.S.B. has a darker complexion than her African-American peers.  Conversely, Plaintiff D.A.B. has a lighter complexion than her siblings, including Plaintiff D.S.B., and her African-American peers.

10. Plaintiffs moved into the area served by John Morrow Elementary School in January 2012.

11. In the 2011-2012 school year, Defendant provided school bus transportation for students that lived in Plaintiffs' neighborhood.

12. However, on the first two mornings of the 2012-2013 school year, Plaintiffs waited for the school bus, but it did not arrive.

13. Upon information and belief, Defendant never informed Plaintiffs that a school bus would not come to pick Plaintiffs up for school.

3

14. The lack of transportation forced Plaintiffs to walk approximately one mile to and from school on Shadeland Avenue, which is located in the Brighton Heights neighborhood of Pittsburgh.

15. In September 2012, R.H., an African-American male student at John Morrow Elementary, slapped Plaintiff D.A.B. in the head while they were in front of the school.

16. Upon information and belief, R.H. slapped Plaintiff D.A.B. because her skin tone is lighter than his.  Out of self-defense, Plaintiff D.A.B. kicked RH between the legs.

17. This incident caused R.H. and several of his male friends to increase the level of harassment towards Plaintiffs.

18. Specifically, R.H. recruited several John Morrow students to form a group whose purpose was to harass and bully Plaintiffs in and out of school because Plaintiffs were female and had different skin tones than R.H.

19. Following the September 2012 incident, R.H. and the other boys started to follow Plaintiffs home from school on a daily basis.

20. On the walks home from school, the boys would pick up any item they could find to throw at Plaintiffs, including rocks and sticks.

21. The boys ripped Plaintiffs' clothes off of their bodies in an attempt to see inside their pants and tore earrings out of Plaintiffs' ears on the way home from school.

22. The boys also kicked, pushed, and punched Plaintiffs on their way home from school.

23. Plaintiffs often arrived home from school covered in dirt and blood due to the violent attacks.

24. Upon information and belief, the boys bullied Plaintiffs due to the fact that Plaintiffs were female and had a different skin tone than the boys.

25. The violence against Plaintiffs initiated in September and continued throughout the entire 2012-2013 school year.

26. On or about September 20, 2012, several of the boys walked down to Plaintiffs' house after school and threw rocks and glass bottles in the window intending to harm Plaintiffs. This action destroyed the front window of Plaintiffs' house.

27. Plaintiffs also endured significant verbal abuse from their classmates both in and out of school throughout the 2012-2013 school year.

28. The bullies' disdain for the Plaintiffs' gender and skin tone is evident from the verbal abuse and sexual harassment the bullies inflicted upon Plaintiffs.

29. For instance, the aforementioned boys and other students at John Morrow frequently called Plaintiff D.S.B. names that referred to her darker skin tone. Such names include, but are not limited to: "blackey," "crispy," "nigger," "darkie," and "black African bush bunny."

30. The same bullies often targeted Plaintiff D.A.B. for her lighter skin by saying that Plaintiff D.A.B. was adopted because her skin is lighter than her sister's.

31. The aforementioned students also sexually harassed Plaintiffs with derogatory terms that refer to Plaintiffs' gender. Such terms include, but are not limited to: "bitch," "whore," "slut," "smut," "cunt," "pussy."

32. The students also sexually harassed Plaintiffs by accusing them of committing acts that are sexual in nature. For instance, several of the students would tease Plaintiff D.A.B., claiming that Plaintiff enjoys drinking her brother's urine. They would also refer to Plaintiff D.S.B. as "African booty licker," and "dick licker."

5

33. During school and the walks home from school, the aforementioned students frightened Plaintiffs and threatened Plaintiffs' lives and home, often threatening to burn Plaintiffs' house down while they slept.

34. The aforementioned bullying of Plaintiffs began in September 2012 and consisted of physical bullying, name-calling, and sexual harassment, which resulted in physical injuries and emotional distress to Plaintiffs.

35. Several of Plaintiffs' teachers, including, but not limited to, Ms. Moots, Ms. DeLawder, and Ms. Smith witnessed the sexual harassment, name-calling, and physical bullying inflicted upon Plaintiffs.  Upon information and belief, none of the aforementioned teachers acted to curb the bullying aside from verbally reprimanding the bullies.

36. On or about October 23, 2012, the Plaintiffs' mother grew increasingly upset and frustrated with the incessant and discriminatory bullying and sexual harassment of her daughters.  She contacted Defendant's Parent Hotline in order to receive help for her daughters.

37. The Plaintiffs' mother spoke to Parent Hotline employees Harriet Webb and Nicole Stallworth about the bullying and sexual harassment.  Webb forwarded the information to John Morrow Principal Alivia Clark and Assistant Superintendent Christiana Otuwa.

38. Upon information and belief, after receiving the information about the bullying and sexual harassment of Plaintiffs, Clark merely called the boys' parents to discipline them.

39. On or about November 1, 2012, Guidance Counselor Jerri Taylor emailed teacher Margaret Molnar-Smith and suggested that Molnar-Smith keep Plaintiff D.A.B. out of the "intervention room."  Taylor further suggested that Molnar-Smith take any bullying and sexual harassment allegations mentioned by Plaintiff D.A.B. seriously.

40. Upon information and belief, school employees including Clark, Molnar-Smith, Otuwa, and new Principal Jamie Kinzel-Nath did not act further to curb the bullying and sexual harassment addressed in the aforementioned November 2012 email correspondence until February 2013.

41. On or about February 12, 2013, Plaintiffs' mother called then-Assistant Principal Carla Berdnik to report the ongoing and persistent bullying and sexual harassment.

42. Upon information and belief, Berdnik merely suspended one of the boys for three days from school with charges pending and notified his parents.  Berdnik also referred the aforementioned boy to the Mercy Behavior program.

43. On or about February 13, 2013, Berdnik contacted Defendant School Police Commander Lisetta Novicki.  Novicki informed Berdnik that the school police would dispatch an officer to the school upon Plaintiffs' arrival.

44. Upon information and belief, the aforementioned police officer never arrived.

45. Plaintiffs' mother repeatedly attempted to contact school administrators, the school police, and the city police from October 2012 throughout the entire school year for help with the bullying and sexual harassment.

46. Upon information and belief, none of the aforementioned groups did anything to help Plaintiffs, except for suspending the bullies and harassers and calling their respective parents.

47. Several of the boys have attended court in front of the city magistrate, as well.  However, the magistrate only verbally reprimanded the boys for bullying and sexually harassing Plaintiffs.

48. Plaintiffs' mother grew increasingly frustrated with the lack of effective remedies to prevent or stop the bullying and sexual harassment of her daughters throughout the 2012-2013 school year.

49. Defendant District and its employees were aware that the conduct of the students directed towards Plaintiffs was detrimental to Plaintiffs' ability to pursue the educational opportunities and benefits provided by the Pittsburgh Public Schools.

50. Under Defendant's district policy and student code of conduct, Defendant District has the responsibility of ensuring that the pupils of its school are not the victims of sexual harassment and bullying within the school setting.

51. In Defendant District's policy, "215. Prohibition Against Bullying/Harassment," "in school," "on school grounds," and "traveling to and from school" are included in the definition of "school setting."

52. Throughout the 2012-2013 school year, employees and Administrators of Defendant District continued to deflect the responsibility of keeping students, such as Plaintiffs, safe from bullying and sexual harassment.

53. After much ineffective correspondence between Plaintiffs' mother and school employees, Defendant's legal department commenced an investigation of the student bullying and sexual harassment towards Plaintiffs.

54. As a part of the investigation, Defendant's legal department issued a letter to Plaintiffs' mother, dated May 31, 2013, in which the legal department revealed its findings.

55. First, the legal department found that Plaintiffs "were the subjects of bullying as defined by District policy on multiple occasions involving different bullies."

56. Second, the department found that "[D.S.B.] was the subject of sexual harassment on at least on (sic) occasion."

57. Third, the department found that "the incidents identified in the complaint constitute violations of the District's policy prohibiting bullying/harassment."

58. Fourth, the department found that "the school investigated all of the incidents identified in the complaints."

59. Fifth, the department found that "the school appropriately disciplined other students for their inappropriate behavior."

60. Defendant's legal department suggested peer safety patrols, student awareness programs, staggered release times for Plaintiffs, and a school contact for Plaintiffs to remedy the bullying and sexual harassment.

61. As of July 2013, upon information and belief, Defendant has not implemented any of the aforementioned changes.

62. Defendant's legal department also suggested that Plaintiffs transfer schools in the 2013-2014 school year.

63. Plaintiffs and their mother believe that these proposed corrective measures are patently inadequate to remedy the bullying and sexual harassment of Plaintiffs.

64. The bullying and sexual harassment persisted to the end of school in June 2013.

65. The bullying of Plaintiffs continued in July 2013 in connection with Plaintiffs' attendance at the Defendant-run summer camp, "Summer Dreamers," at Pittsburgh Classical Academy.

66. Several of the students who harassed and bullied Plaintiffs throughout the school year continued to do so on one bus ride home from camp.

67. Specifically, the students pushed, punched, spat on, sat on, and physically harassed Plaintiffs because of their skin color and gender.

68. The students on the bus continued to verbally abuse Plaintiffs just as they did in school. Students called Plaintiffs "bitches," yelled at Plaintiffs, and told them to get off the bus.

69. The students also harassed Plaintiff D.S.B. by referring to Plaintiff D.S.B.'s skin color, calling her "burnt and crispy."

70. Plaintiffs suffered from bruises, lumps, and welts on their heads and faces arising from this incident.

71. The conduct of Plaintiffs' peers throughout the school year negatively affected Plaintiffs, and Plaintiffs have suffered severe emotional distress due to the bullying and sexual harassment.

72. Plaintiffs were too afraid to attend school due to the bullying and sexual harassment.

73. Plaintiffs each missed over a month of school during the 2012-2013 school year due to fear.

74. Plaintiffs' grades suffered significantly since the bullying and sexual harassment started.

75. Prior to the bullying and sexual harassment at John Morrow, Plaintiffs enjoyed attending school. However, once the bullying and sexual harassment commenced, Plaintiffs feigned illnesses and made up excuses to avoid the bullying and sexual harassment within and outside of school.

76. Plaintiff D.A.B. often hid from her mother in order to avoid school.

77. Plaintiffs cried about the bullying and sexual harassment and have experienced mental and emotional breakdowns because of the bullying and sexual harassment.

78. Plaintiff D.A.B. experienced significant anxiety due to the bullying and sexual harassment. Specifically, Plaintiff D.A.B. forced herself to vomit and urinated on herself due to the severe anxiety.

79. Plaintiff D.S.B. has expressed depression-like symptoms and suicidal thoughts that stem from the bullying and sexual harassment and is in the process of seeking private assistance to deal with her mental anguish.

## COUNT ONE
### Hostile Educational Environment Under Title IX of the Education Amendments Act of 1972 (20 U.S.C. § 1681 et seq.)

80. Plaintiffs hereby incorporate the previous paragraphs by reference as if fully set forth herein.

81. The Defendant District is a public school district that receives federal funding.

82. Defendant District is charged with ensuring that pupils receive an education free from discrimination on the basis of sex.

83. Plaintiffs experienced such discrimination in the form of physical and verbal sexual harassment from their peers, which caused them severe mental anguish.

84. The conduct of Plaintiffs' peers amounted to intentional sexual harassment.

85. The sexual harassment occurred in circumstances where Defendant District exercised substantial control over both the harassers and the context in which the harassment occurred.

86. Defendant District had substantial control over the sexual harassment of Plaintiffs because at all relevant times, sexual harassment occurred within the "school setting" as defined by Defendant's policy, "215. Prohibition Against Bullying/Harassment."

87. Defendant had actual knowledge of the sexual harassment of Plaintiffs, which is evidenced by the fact that several employees and administrators of Defendant District personally witnessed the sexual harassment against Plaintiffs.

88. At all relevant times, Defendant had knowledge of the sexual harassment of Plaintiffs due to Plaintiffs' mother contacting several administrators and employees of Defendant school district about the harassment on multiple occasions.

89. By failing to adequately remedy the continuous and pervasive sexual harassment suffered by Plaintiffs throughout the 2012-2013 school year, Defendant's actions amounted to deliberate indifference.

90. The sexual harassment by students of Defendant District was so severe, pervasive, and objectively offensive that it deprived Plaintiffs access to the educational opportunities and benefits provided by the school.

91. As a result of the sexual harassment and bullying, Plaintiffs D.S.B. and D.A.B. felt extremely uncomfortable at school and experienced severe and pervasive physical and emotional distress.

92. At all times, Defendant, through the general knowledge and awareness of Defendant administrators and employees, knew or should have known that the Plaintiffs were being sexually harassed, but failed to take any effective action to ameliorate the problem.

93. As a result of the aforementioned sexual harassment, Plaintiffs suffered a significant decrease in the quality of their grades, suffered extreme emotional distress, and were unable to fully take advantage of the educational opportunities available to them in the Pittsburgh Public School District.

WHEREFORE, Plaintiff prays this Honorable Court grant Plaintiffs money damages in an amount that adequately compensates them for their damages, attorneys' fees, costs, and other damages established by Plaintiffs that are related to Defendants' illegal acts.

**COUNT TWO**
**Hostile Educational Environment Under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.)**

94. Plaintiffs hereby incorporate the previous paragraphs by reference as if fully set forth herein.

95. The Defendant District is a public school district that receives federal funding.

96. Defendant District is charged with ensuring that pupils receive an education free from discrimination based upon skin color.

97. Plaintiffs experienced such discrimination in the form of physical and verbal bullying from their peers due to the color of their skin, which caused Plaintiffs severe mental anguish.

98. The conduct of Plaintiffs' peers amounted to intentional discrimination based upon color.

99. The bullying occurred under circumstances in which Defendant District exercised substantial control over both the bullies and the context in which the bullying occurred.

100. Defendant District had substantial control over the bullying of Plaintiffs, because at all relevant times, the bullying occurred within the "school setting" as defined by Defendant's policy, "215. Prohibition Against Bullying/Harassment."

101. Defendant had actual knowledge of the bullying of Plaintiffs, which is evidenced by the fact that several employees and administrators of Defendant District personally witnessed the bullying.

102. At all relevant times, Defendant had knowledge of the bullying of Plaintiffs due to Plaintiffs' mother contacting several administrators and employees of Defendant school district on multiple occasions.

103. By failing to adequately remedy the continuous and pervasive bullying suffered by the Plaintiffs, Defendant's actions amounted to deliberate indifference.

104. The bullying by students of Defendant District was so severe, pervasive, and objectively offensive that it deprived Plaintiffs access to the educational opportunities and benefits provided by the school.

105. As a result of the harassment and bullying, Plaintiffs D.S.B. and D.A.B. felt extremely uncomfortable at school and experienced severe and pervasive physical and emotional distress.

106. At all times, Defendant, through the general knowledge and awareness of Defendant's administrators and employees, knew or should have known that the Plaintiffs were being bullied due to color, but failed to take any effective action to ameliorate the problem.

107. As a result of the aforementioned bullying, Plaintiffs suffered a significant decrease in the quality of their grades, suffered extreme emotional distress, and were unable to fully take advantage of the educational opportunities available to them in the Pittsburgh Public School District.

WHEREFORE, Plaintiff prays this Honorable Court grant Plaintiffs money damages in an amount that adequately compensates them for their damages, attorneys' fees, costs, and other damages established by Plaintiffs that are related to Defendants' illegal acts.

Respectfully submitted,

*/s/ Charles E. Steele, Esquire*
Charles E. Steele, Esquire
PA I.D. No. 36583
STEELE SCHNEIDER
Lawyers Building
428 Forbes Avenue, Suite 700
Pittsburgh, PA 15219
(412) 235-7682
(412) 235-7693/facsimile
charliesteele@steeleschneider.com